UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────

NYJEE L. BOYD,

                              Plaintiff,

        v.                                              9:18-CV-1333
                                                        (TJM/ATB)


JOHN DOE #1, et al.,

                              Defendants.
───────────────────────────────

APPEARANCES:

NYJEE L. BOYD
Plaintiff, Pro Se
15-B-2063
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929

HON. LETITIA JAMES                    HELENA O. PEDERSON, ESQ.
New York State Attorney General       Ass't Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224


THOMAS J. McAVOY
Senior United States District Judge

## DECISION AND ORDER

## I.      INTRODUCTION

        Plaintiff Nyjee L. Boyd commenced this action pursuant to 42 U.S.C. § 1983 ("Section

1983") by filing a pro se civil rights complaint together with an application for leave to proceed

in forma pauperis.  Dkt. No. 1 ("Compl."); Dkt. No. 4 ("IFP Application").  By Decision and

Order of this Court filed January 2, 2019, plaintiff's IFP Application was granted, and following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), some of plaintiff's claims and some of the named defendants were dismissed and the Court directed service and a response for the claims against the named defendants that survived sua sponte review. Dkt. No. 6 ("January 2019 Order").

Thereafter, plaintiff filed a motion to amend his complaint, together with a proposed amended complaint. *See* Dkt. No. 18 ("First Motion to Amend"); Dkt. No. 18-1 ("Prop. Am. Compl."). Defendant Young then answered the complaint, and defendants Annucci, Baer, Bell, Hunt, and Wood moved to dismiss the claims asserted against them in the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P. 12(b)(6)"). Dkt. No. 19 ("Young Answer"); Dkt. No. 20 ("First Motion to Dismiss"). By Decision and Order filed April 23, 2019, this Court accepted the proposed amended complaint as the operative pleading, ordered that the Clerk add certain individuals as defendants, and directed service and a response with respect to the claims that survived sua sponte review. *See* Dkt. No. 22 ("April 2019 Order"). The Court also dismissed plaintiff's remaining claims pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted, and denied the First Motion to Dismiss without prejudice and with leave to renew upon the completion of service. *Id*. at 19-20.

Following the April 2019 Order, defendants Holland and Dubrey were served, and counsel filed a motion for partial dismissal of the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 28 ("Acknowledgment of Service"); Dkt. No. 31 ("Second Motion to Dismiss"). In lieu of opposing the Second Motion to Dismiss, plaintiff filed a motion to amend his amended complaint, together with a proposed second amended complaint. *See* Dkt. No.

2

37 ("Second Motion to Amend"); Dkt. No. 37-1 ("Prop. SAC").[1]  Defendants have opposed

the Second Motion to Amend.  *See* Dkt. No. 39.

## II.    PLAINTIFF'S MOTION TO AMEND

### A.    Legal Standard Governing Motions to Amend

The Federal Rules of Civil Procedure provide that courts "should freely give leave" to

amend a complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Second Circuit

has stated that "[t]his permissive standard is consistent with our strong preference for

resolving disputes on the merits."  *Williams v. Citigroup Inc*., 659 F. 3d 208, 212-13 (2d Cir.

2011) (citation omitted).  Leave to amend should be given "absent evidence of undue delay,

bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party,

or futility."  *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see also*

*Couloute v. Ryncarz*, No. 11-CV-5986, 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17, 2012)

(quoting *Monahan*, 214 F.3d at 283).  However, motions to amend "should generally be

denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to

cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving

party."  *Burch v. Pioneer Credit Recovery, Inc*., 551 F.3d 122, 126 (2d Cir. 2008); *Monahan*,

214 F.3d at 283.  An amendment is futile if the proposed claim could not survive a motion to

dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Lucente v. Int'l*

*Bus. Machines Corp*., 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. North*

*Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)); *see also Malesko v.*

*Corr. Serv. Corp.*, 229 F.3d 374, 382-84 (2d Cir. 2000), *rev'd on other grounds*, 534 U.S. 61

---

[1]  Plaintiff has also submitted exhibits in support of his Second Motion to Amend.  *See* Dkt. No. 37-2.

(2001) (A proposed amended complaint seeking to assert claims barred by the statute of limitations is futile and must be denied). The decision to grant or deny a motion to amend is committed to the sound discretion of the trial court and the court's decision is not subject to review on appeal except for abuse of discretion. *Nettis v. Levitt*, 241 F.3d 186, 192 (2d Cir. 2001).

### B.    The Amended Complaint and April 2019 Order

As with plaintiff's original complaint, his amended complaint asserted claims arising while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Clinton Correctional Facility ("Clinton C.F."). *See generally* Compl.; Am. Compl.

In the April 2019 Order, the Court construed the amended complaint to assert the following claims: (1) First Amendment free exercise claims against defendants C.O. John Doe #2, Baer, C.O. John Doe #3, Wood, Sgt John Doe #1, Dubrey, Annucci, and Bell;[2] (2) First Amendment retaliation claims against defendants C.O. John Doe #2, Baer, C.O. John Doe #3, Sgt John Doe #1, Wood, Hunt, Young, Holland, Dubrey, Annucci, and Bell;[3] (3) Eighth Amendment excessive force claim and failure-to-intervene claims against defendants Baer, C.O. John Doe #7, Hunt, Sgt John Doe #1, Sgt John Doe #2, C.O. John Doe #1, C.O. John Doe #3, C.O. John Doe #6, Dubrey, Bell, and Annucci;[4] (4) an Eighth Amendment failure-to-protect claim against defendant Holland; (5) an Eighth Amendment medical

---

[2] Plaintiff's free exercise claims against defendants Annucci and Bell were based on their alleged personal involvement as supervisory officials.

[3] Plaintiff's retaliation claims against defendants Annucci and Bell were based on their alleged personal involvement as supervisory officials.

[4] Plaintiff's Eighth Amendment claims against defendants Annucci and Bell were based on their alleged personal involvement as supervisory officials.

4

indifference claim against defendant Wood based on an alleged event that occurred on May 1, 2018; (6) Eighth Amendment conditions-of-confinement claims against defendants Baer, C.O. John Doe #2, Wood, Young, C.O. John Doe #3, Dubrey, and Hill; (7) Fourteenth Amendment due process claims against defendants Wood and Baer based on the issuance of false misbehavior reports; and (8) a Fourteenth Amendment destruction of property claim against defendant Wood.  *See* April 2019 Order at 4-6, 17-18.

Following review of the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the following claims were found to survive sua sponte review and require a response: (1) plaintiff's free exercise claims against defendants C.O. John Doe #2, Baer, C.O. John Doe #3, Sgt John Doe #1, Wood, Dubrey, Annucci, and Bell; (2) plaintiff's retaliation claims against defendants C.O. John Doe #2, Baer, C.O. John Doe #3, Wood, Hunt, Young, Holland, Dubrey, Annucci, and Bell;[5] (3) plaintiff's excessive force claim against defendant Baer based on alleged events that occurred on March 29, 2018;[6] (4) plaintiff's excessive force claims against defendants Hunt, Bell, and Annucci based on alleged events that occurred on April 6, 2018; (5) plaintiff's excessive force claims against defendants Baer, Bell, and Annucci based on alleged events that occurred on April 17, 2018; and (6) plaintiff's excessive force and failure-to-intervene claims against defendants Sgt John Doe #1, Sgt John Doe #2, C.O. John Doe #1, C.O. John Doe #6, Annucci, and Bell based on alleged events that occurred on April 22, 2018.  *See* April 2019 Order at 19.  All remaining claims

---

[5]  The April 2019 Order did not address plaintiff's First Amendment retaliation claim against Sgt John Doe #1.  However, because this claim is based on the same allegations that give rise to plaintiff's free exercise claim against this defendant, that claim remains in this action.

[6]  The April 2019 Order dismissed plaintiff's Eighth Amendment claims against defendants Bell and Annucci to the extent those claims were based on events that occurred on March 29, 2019.  *See* April 2019 Order at 10.

were dismissed for failure to state a claim upon which relief may be granted.  *Id.*[7]

C. **Overview of the Proposed Second Amended Complaint**

Plaintiff's proposed second amended complaint is substantially the same as his amended complaint with a few exceptions.

First, plaintiff has withdrawn his First Amendment free exercise claim against defendant Baer based on alleged events that occurred on April 5, 2018, which are not referenced in the proposed second amended complaint.  *See generally*, Prop. SAC.

Second, plaintiff has withdrawn his Fourteenth Amendment due process claim against defendant Wood based on alleged events that occurred on May 1, 2018, as well as his Fourteenth Amendment due process claims against defendants Wood and Baer based on their alleged issuance of false misbehavior reports.

Third, with the exception of plaintiff's withdrawn Fourteenth Amendment due process claims, plaintiff has added new allegations (and attached additional documentary evidence) in support of his claims that were dismissed without prejudice in the April 2019 Order.

Fourth, plaintiff has named the following six new individuals as defendants, and asserted claims for relief against them based on alleged events that occurred after the filing date of the original complaint: (1) Corrections Officer John Doe #8; (2) Corrections Officer Mahan; (3) Corrections Sergeant Burgess; (4) SORC Brayton; (5) Corrections Officer John Doe #9; and (6) ADSP L. Gonzalez.  *See* Prop. SAC at 22-31.  The following new facts are set forth as alleged in the proposed second amended complaint.

---

[7]  The claims that were dismissed in the January 2019 Order, re-asserted in the April 2019 Order, and dismissed were dismissed with prejudice.  With respect to the claims that were asserted for the first time in the amended complaint and dismissed, the Court intended for those claims to be dismissed without prejudice and hereby corrects the April 2019 Order in this regard pursuant to Fed. R. Civ. P. 60(a).

Several of the defendants in this case were served with summonses on or before February 22, 2019.  Prop. SAC at 22; Dkt. Nos. 12, 14.  On March 4, 2019, at approximately 7:00 a.m., Corrections Officer John Doe #8 escorted a medical nurse performing rounds through plaintiff's cell block area.  Prop. SAC at 22.  When they arrived at plaintiff's cell, Corrections Officer John Doe #8 stated, "I know all about your bullshit lawsuit. Since you like to file lawsuits, we[']re going to set you up[.]"  *Id.*

At approximately 10:05 a.m., Corrections Officers Mahan and John Doe #8 opened plaintiff's cell and ordered him to "get dressed" because he "had a medical call-out."  Prop. SAC at 22.  After plaintiff dressed himself, Corrections Officers Mahan and John Doe #8 placed him in mechanical restraints and then escorted him "to the end of the company[.]"  *Id.* During the escort, plaintiff observed Corrections Sergeant Burgess "standing at the end of the 2 company[,] watching."  *Id.*  Before arriving at the end of the company, plaintiff was directed to enter "the slop sink[,] which is the last cell at the end of the company w[h]ere staff keeps all the cleaning supplies[.]"  *Id.*  Plaintiff asked why he was being "push[ed] . . . into the cell," and was advised that his cell needed to be searched.  *Id.*  Corrections Officers Mahan and John Doe #8 then left to conduct a search of plaintiff's cell while Corrections Sergeant Burgess observed plaintiff from the end of the company.  *Id.*

After "about an hour[,]" Corrections Officers Mahan and John Doe #8 returned, removed plaintiff from the "slop sink" cell, and escorted him to his cell.  Prop. SAC at 22. After plaintiff entered his cell, he "discovered several of [his] legal documents . . . [and] pictures" were "destroyed[.]"  *Id.*  Plaintiff filed a "property claim" regarding these items.  *Id.* at 22-23.

Following the cell search, plaintiff "was also issued a false misbehavior report by C.O. Mahan[,]" which was "endorsed by C.O. John Doe #8[,]" and charged plaintiff with possession of an altered item, alcohol, and contraband.  Prop. SAC at 23.

On March 7, 2019, "a hearing was commenced by Hearing Officer SORC Brayton" regarding the charges in the misbehavior report plaintiff received on March 4, 2019.  Prop. SAC at 24.  SORC Brayton heard testimony from plaintiff, an inmate housed in a neighboring cell, Corrections Officer Mahan, and Corrections Sergeant Burgess, and also reviewed the unusual incident report and a video recording showing the beginning and end of the search of plaintiff's cell.  *Id.* at 24-25.  After considering this evidence, SORC Brayton found plaintiff guilty of the charges in the misbehavior report and sentenced him to 90 days of keeplock confinement and loss of commissary, package, and phone privileges.  *Id.* at 26.  The guilty determination was affirmed on appeal.  *Id.* at 26.

On April 9, 2019, at approximately 9:45 a.m., Corrections Officers John Doe #9 and Mahan asked the Company Officer (not a party) to open plaintiff's cell.  Prop. SAC at 27. After plaintiff's cell was opened, Corrections Officers John Doe #9 and Mahan entered the cell and Corrections Officer John Doe #9 escorted plaintiff out, after which point plaintiff was directed to look away while his cell was searched.  *Id.*  Corrections Sergeant Burgess was present for the search, which lasted thirty minutes.  *Id.*

Following the search, plaintiff was issued "a fabricated misbehavior report" by Corrections Officer Mahan, which charged him with, among other things, possession of an altered item, possession of contraband, damaging property, tampering with property, violating a direct order, and interference.  Prop. SAC at 27.

On April 11, 2019, plaintiff was transferred from Clinton C.F. to Fishkill Correctional

8

Facility.  Prop. SAC at 29.  On April 17, 2019, ADSP L. Gonzalez began a Tier III disciplinary hearing regarding the charges in the misbehavior report plaintiff received from Corrections Officer Mahan on April 9, 2019.  *Id.*  Plaintiff advised Gonzalez that he "never received any assistance . . . prior to [the] hearing[.]"  *Id.*  Gonzalez then read the misbehavior report and unusual incident report into the record and adjourned the hearing.  *Id.*

Before recommencing the hearing, Gonzalez advised that "he was assigning his self [sic] as [plaintiff's] assistant and asked [plaintiff] what [he] needed."  Prop. SAC at 29. Plaintiff asked Gonzalez to "turn the hearing tape on so [plaintiff] could object to [the] self-assignment on record," which Gonzalez refused to do.  *Id.*  Plaintiff then advised Gonzalez that he "wanted to call both of [his] neighbors at the time of the incident" as witnesses, along with Corrections Sergeant Burgess and Corrections Officer Mahan, and "wanted the video of the incident" along with the log book entries.  *Id.*

Upon recommencement of the hearing, plaintiff testified about "what occurred and that the officers fabricated the misbehavior report to retaliate against [him]" and refused to allow him to observe the cell search.  Prop. SAC at 29.  One of plaintiff's cell neighbors then testified by phone and "corroborat[ed] [plaintiff's] version of events."  *Id.* at 30.  The video of the cell search was also played, which showed that plaintiff was prevented from observing the search, and also did not show any contraband removed from the cell.  *Id.*  A second of plaintiff's cell neighbors further testified in a manner that "corroborated [plaintiff's] testimony[.]"  *Id.*

Thereafter, Corrections Officer Mahan testified consistent with the statements in the misbehavior report, and the hearing was then adjourned.  Prop. SAC at 30.  During the

adjournment, Gonzalez suggested that plaintiff plead guilty and stated that if plaintiff refused to do so, he would be found guilty and receive "the maximum penalty," which would include a suspension of good time credits. *Id.* "Due to mental duress[, plaintiff] agreed and pleaded guilty[.]" *Id.* Gonzalez then recommenced the hearing and imposed a sentence of 60 days keeplock confinement and 30 days of suspended privileges. *Id.*

The Court construes these allegations to assert the following new claims for relief, for which plaintiff seeks money damages: (1) First Amendment retaliation claims against Corrections Officer John Doe #8, Corrections Officer Mahan, Corrections Sergeant Burgess, and Corrections Officer John Doe #9; (2) Eighth Amendment excessive cell search claims against Corrections Officer John Doe #8, Corrections Officer Mahan, Corrections Sergeant Burgess, and Corrections Officer John Doe #9;[8] and (3) Fourteenth Amendment due process claims against SORC Brayton and ADSP L. Gonzalez.

The remainder of the proposed second amended complaint is materially similar to the amended complaint, and re-asserts all of the same claims asserted in the amended complaint against all of the same defendants (with the exception of plaintiff's First Amendment free exercise claim against defendant Baer and plaintiff's Fourteenth Amendment due process claims against defendants Wood and Baer). *See generally* Prop SAC. For a more complete statement of plaintiff's claims, reference is made to the proposed second amended complaint.

---

[8] An alleged issuance of a false misbehavior report cannot form the basis of an Eighth Amendment claim. *See Bordas v. Payant*, No. 9:08-CV-0458 (TJM), 2009 WL 35292, at *4 n.7 (N.D.N.Y. Jan. 5, 2009) ("Issuance of the misbehavior reports is not itself actionable as plaintiff has no constitutionally protected right to be free from false accusations of misconduct." (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986), *cert. denied*, 485 U.S. 982 (1988)), *aff'd*, 374 Fed. App'x 192 (2d Cir. 2010). Thus, the Court does not construe the allegations in the proposed second amended complaint to assert an Eighth Amendment claim based on the alleged false or fabricated misbehavior reports.

**D. Analysis**

Because plaintiff is proceeding in forma pauperis and is an inmate suing government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the January 2019 Order and it will not be restated in this Decision and Order. *See* January 2019 Order at 2-4.

**1. Previously Dismissed Claims Re-Asserted in the Proposed Second Amended Complaint**

In the April 2019 Order, the Court previously dismissed the following claims, which plaintiff has re-asserted in his proposed Second Amended Complaint: (1) Eighth Amendment failure-to-intervene claims against defendants C.O. John Doe #7, Annucci, and Bell based on the alleged events of March 29, 2018; (2) an Eighth Amendment failure-to-intervene claim against defendant C.O. John Doe #3 based on the alleged events of April 6, 2018; (3) an Eighth Amendment excessive force claim against defendant Dubrey; (4) an Eighth Amendment failure-to-protect claim against defendant Holland; (5) an Eighth Amendment medical indifference claim against defendant Wood based on an alleged event that occurred on May 1, 2018; and (6) Eighth Amendment conditions-of-confinement claims against defendants Baer, C.O. John Doe #2, Wood, Young, C.O. John Doe #3, Dubrey, and Hill. *See* April 2019 Order at 19; Prop SAC at 8-21.

**(a) Failure-to-Intervene Claims**

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*,

11

429 U.S. 97, 104 (1976).  This includes punishments that "involve the unnecessary and wanton infliction of pain."  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency."  *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).[9]

In addition, "[i]t is well-established that a law enforcement official has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his presence by other officers."  *Cicio v. Lamora*, No. 9:08-CV-0431 (GLS/DEP), 2010 WL 1063875, at *8 (N.D.N.Y. Feb. 24, 2010) (a corrections officer who does not participate in, but is present when an assault on an inmate occurs may still be liable for any resulting constitutional deprivation); *see also Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Failure to intercede results in [Section 1983] liability where an officer observes excessive force being used or has reason to know that it will be.") (citations omitted).  Law enforcement officials, including prison officials, can be held liable under Section 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including through the use of excessive force, in their presence.  *See Curley*, 268 F.3d

---

[9]  In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated."  *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9).  The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

at 72; *see also Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (prison official's Eighth Amendment duty to take reasonable measures to guarantee the safety of inmates in their custody includes a duty to protect inmates from harm threatened by other officers).

Plaintiff's proposed second amended complaint includes additional allegations in support of his failure-to-intervene claims against defendants C.O. John Doe #7, Annucci, Bell, and C.O. John Doe #3.

### i. March 29, 2018

Plaintiff alleges that C.O. John Doe #7 stood directly next to defendant Baer when defendant Baer searched plaintiff and, "in the midst of the search, . . . stuck his hand in [plaintiff's] boxers and grabbed and pulled [plaintiff's] testicles . . . for about 10 seconds." Prop. SAC at 8. Plaintiff further alleges that he notified defendants Bell and Annucci about the events of March 29, 2018, yet they failed to protect him from future harm. *Id*. at 9, 19, 21.

With respect to defendants Bell and Annucci, plaintiff alleges only that he complained to these individuals about the alleged use-of-force incident after it happened. As noted in the April 2019 Order, a "failure to remedy" theory of liability is not available against a supervisor with respect to discrete and completed violations. *See Jackson*, 256 F.3d at 96 (citing *Blyden*, 186 F.3d at 259, 264 and *Wright*, 21 F.3d at 501); *see also Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989) ("[T]he wrong must have been ongoing or otherwise capable of mitigation at the time the supervisory official was apprised thereof."). Thus, defendants Bell and Annucci cannot be liable for this alleged wrongdoing.[10] Accordingly, plaintiff's Second Motion to Amend is denied to the extent plaintiff seeks to assert failure-to-intervene

---

[10] This ruling does not preclude a finding of supervisory liability with respect to later alleged wrongdoing.

claims against defendants Annucci and Bell arising out of the alleged events that occurred on March 29, 2018.

With respect to defendant C.O. John Doe #7, at this stage of the proceeding, the allegations in the proposed second amended complaint are sufficient to warrant a response. Accordingly, plaintiff's Second Motion to Amend is granted to the extent plaintiff seeks to assert a failure-to-intervene claim against defendant C.O. John Doe #7 based on alleged events that occurred on March 29, 2018. However, in so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### ii. April 6, 2018

Plaintiff alleges that C.O. John Doe #3 escorted him to "the B-Block frisker/metal detector" and stood next to him when he was pat frisked by defendant Hunt. Prop. SAC at 18. Plaintiff further alleges that for approximately ten seconds, defendant Hunt "grabbed [plaintiff's] buttocks with both hands and pressed his body close to [plaintiff's]" while stating, "If you haven't noticed[,] we do what we want here." *Id.*

At this stage of the proceeding, the allegations in the proposed second amended complaint are sufficient to warrant a response with respect to this claim. Accordingly, plaintiff's Second Motion to Amend is granted to the extent plaintiff seeks to assert a failure-to-intervene claim against defendant C.O. John Doe #3 based on alleged events that occurred on April 6, 2018. However, in so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### (b) Other Previously Dismissed Claims

The allegations in the proposed second amended complaint are not materially different from the allegations in the amended complaint with respect to the other previously

dismissed claims identified above in Section II.D.1.  Accordingly, and for the reasons set forth in the April 2019 Order, plaintiff's Second Motion to Amend is denied to the extent plaintiff seeks to re-assert these claims.

## 2.  Existing Claims that Survived the April 2019 Order

As noted, the following claims survived the Court's review of the amended complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b): (1) plaintiff's free exercise claims against defendants C.O. John Doe #2, Baer, C.O. John Doe #3, Sgt John Doe #1, Wood, Dubrey, Annucci, and Bell; (2) plaintiff's retaliation claims against defendants C.O. John Doe #2, Baer, C.O. John Doe #3, Wood, Hunt, Young, Holland, Sgt John Doe #1, Dubrey, Annucci, and Bell; (3) plaintiff's Eighth Amendment excessive force claim against defendant Baer based on the alleged events that occurred on March 29, 2018; (4) plaintiff's Eighth Amendment excessive force claims against defendants Hunt, Bell, and Annucci based on the alleged events that occurred on April 6, 2018; (5) plaintiff's Eighth Amendment excessive force claims against defendants Baer, Bell, and Annucci based on the alleged events that occurred on April 17, 2018; and (6) plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against defendants Sgt John Doe #1, Sgt John Doe #2, C.O. John Doe #1, C.O. John Doe #6, Annucci, and Bell based on the alleged events that occurred on April 22, 2018.

With the exception of plaintiff's First Amendment free exercise claim against defendant Baer, plaintiff has re-asserted each of the aforementioned claims in his proposed second amended complaint.  *See generally*, Prop. SAC.  Accordingly, and for the reasons set forth in the April 2019 Order, plaintiff's Second Motion to Amend is granted to the extent plaintiff seeks to re-assert these claims, which once again survive initial review and require a

15

response.[11]  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 3.  New Claims

As noted, the Court construes the allegations against the proposed six new defendants to assert the following new claims for relief: (1) First Amendment retaliation claims against Corrections Officer John Doe #8, Corrections Officer Mahan, Corrections Sergeant Burgess, and Corrections Officer John Doe #9; (2) Eighth Amendment excessive cell search claims against Corrections Officer John Doe #8, Corrections Officer Mahan, Corrections Sergeant Burgess, and Corrections Officer John Doe #9; and (3) Fourteenth Amendment due process claims against SORC Brayton and ADSP L. Gonzalez.

### (a)  Retaliation Claims

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'"  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (*quoting Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action."  *Davis*, 320 F.3d at 352 (*quoting*

---

[11]  Because the proposed second amended complaint does not re-assert plaintiff's First Amendment free exercise claim against defendant Baer, this claim is no longer part of this action.

*Dawes*, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

The Second Circuit "define[s] adverse action objectively, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (alterations, internal quotation marks, emphasis omitted).

### i. March 4, 2019 Incident

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that a response to plaintiff's retaliation claims against Corrections Officers John Doe #8 and Mahan arising out of the alleged events of March 4, 2019, is warranted and therefore grants plaintiff's Second Motion to Amend to the extent it asserts these claims. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to Corrections Sergeant Burgess because the allegations in the proposed second amended complaint suggest only that he authorized the search of plaintiff's cell after being advised by Corrections Officer Mahan of a "strong odor . . . coming from [the] cell[.]" Prop. SAC at 25. Authorizing the cell search, by itself, cannot be considered an adverse action, particularly because plaintiff was confined in a special housing unit at the time, and "inmates in SHU are well aware that random searches of their cells are conducted daily, thus, a search would not deter similarly situated inmates from exercising their constitutional rights." *H'Shaka v.*

17

*Drown*, No. 9:03-CV-937(LEK/RFT), 2007 WL 1017275, at *12 (N.D.N.Y. Mar. 30, 2007) (collecting cases); *see also Hudson v. Palmer*, 468 U.S. 517, 530 (1984) (holding that "inmates have no constitutional protection from cell searches, even those conducted for retaliatory reasons").

In addition, the proposed second amended complaint lacks any allegations which plausibly suggest that Corrections Sergeant Burgess was personally involved in the cell search or issuance of the false misbehavior report. Furthermore, the proposed second amended complaint is devoid of any allegations which plausibly suggest that Corrections Sergeant Burgess was aware that plaintiff was removed from his cell under false pretenses. Thus, there is no basis for the Court to plausibly infer that Corrections Sergeant Burgess was personally involved in any alleged adverse action.

Accordingly, plaintiff's Second Motion to Amend is denied to the extent plaintiff seeks to assert a retaliation claim against Corrections Sergeant Burgess.

### ii. April 9, 2019 Incident

The proposed second amended complaint alleges that Corrections Officers John Doe #9 and Mahan entered plaintiff's cell on the morning of April 9, 2019, and Corrections Officer John Doe #9 escorted plaintiff out, after which point he was directed to look away while his cell was searched. Prop. SAC at 27. Corrections Sergeant Burgess was allegedly present for the search, which lasted thirty minutes. *Id*. The proposed second amended complaint further alleges that after the search, plaintiff was issued "a fabricated misbehavior report" by Corrections Officer Mahan, which charged him with various rules violations. *Id*.

To the extent plaintiff's retaliation claim is based on the search of his cell, as noted above, the performance of the search is insufficient, by itself, to constitute adverse action.

18

Moreover, to the extent plaintiff's retaliation claim is based on allegations that he was issued a "fabricated misbehavior report" following the search, by plaintiff's own allegations, he plead guilty to at least some of the charges in the misbehavior report. *See* Prop. SAC at 30. In addition, while plaintiff alleges that ADSP L. Gonzalez coerced him into pleading guilty, he does not allege that he was innocent of all of the charges in the misbehavior report.[12] Thus, there is no basis for the Court to plausibly infer that the alleged "fabricated misbehavior report" "would deter a similarly situated individual of ordinary firmness from exercising [his] constitutional rights." *See Gill*, 389 F.3d at 381; *see also White v. Bergenstock*, No. 08-CV-717 (FJS/DRH), 2009 WL 4544390, at *7 (N.D.N.Y. Nov. 25, 2009) (stating that since inmate's conviction on charges in misbehavior report had never been overturned, "there is no sufficient allegation that the misbehavior report was false," and that inmate's claims that correction officer had issued report in retaliation for inmate's grievance were "wholly conclusory with no plausible nexus between the grievance and the misbehavior report"); *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 477-78 (N.D.N.Y. 2009) (dismissing, sua sponte, prisoner's retaliation claim against correction officer stemming from officer's issuance of misbehavior report against plaintiff, where plaintiff's allegations that he was convicted of the disciplinary charge, and that the conviction was affirmed on appeal, "plausibly suggest[ed] that what caused him to receive the referenced misbehavior report was his own misconduct"); *Coleman v. Sutton*, 530 F. Supp. 2d 451, 453 (W.D.N.Y. 2008) (noting that plaintiff's plea of "guilty to the charged [sic] in the misbehavior report filed against him by Nurse Welburn . . . defeats any claim based on the issuance of the report" (citing *Reid v.*

---

[12] Indeed, plaintiff alleges only that the misbehavior report was "fabricated," whereas he alleges that the misbehavior report he received on March 4, 2019, was "false." *See* Prop. SAC at 23, 27.

*Doe*, No. 95-CV-1144, 1997 WL 216226, at *5 (N.D.N.Y. Apr. 15, 1997) (stating that since inmate plaintiff pleaded guilty to harassment charge in misbehavior report, there could be no constitutional violation arising out of issuance of report, even if report was motivated in part by retaliation)), *aff'd*, 355 Fed. App'x 566 (2d Cir. 2009); *Pledger v. Hudson*, No. 99-CV-2167, 2005 WL 736228, at *5 (S.D.N.Y. Mar. 31, 2005) (declining to find adverse action where plaintiff "admitted to the content of the [misbehavior] report and plead guilty to one of the charges in it").

Accordingly, plaintiff's Second Motion to Amend is denied to the extent plaintiff seeks to assert retaliation claims arising out of the alleged events that occurred on April 9, 2019.

### (b) Excessive Cell Search Claims

The Supreme Court long ago held that a prisoner has no reasonable expectation of privacy in his prison cell. *See Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984). Even cell searches "conducted solely for harassment" do not implicate the Fourth Amendment. *See Willis v. Artuz*, 301 F.3d 65, 68-69 (2d Cir. 2002). "The only constitutional limit on the search of a prison cell is imposed by the Eighth Amendment's bar against cruel and unusual punishment." *Jones v. Harris*, 665 F. Supp. 2d 384, 395 (S.D.N.Y. 2009). "If a cell search qualifies as cruel and unusual punishment—which is to say, if the cell search lacked any legitimate penological interest and was intended solely to harass—then it may be actionable." *Id.* (citing *Lashley v. Wakefield*, 367 F. Supp. 2d 461, 470 (W.D.N.Y. 2005)).

In order to adequately plead an Eighth Amendment violation based on a cell search, an inmate must allege facts which plausibly suggest that a defendant "ordered the searches with the specific intent to cause plaintiff harm and that the searches in fact caused him harm." *Lashley*, 367 F. Supp. 2d at 471 (citing *Hudson*, 503 U.S. at 7-8). "The deprivation

20

alleged by the prisoner must be sufficiently serious in objective terms such that it suggests denial of the minimal civilized measure of life's necessities (the objective element)." *Jones*, 665 F. Supp. 2d at 395. "And because only the unnecessary and wanton infliction of pain implicates the Eighth Amendment, the prisoner must assert facts indicating that the responsible prison official had a sufficiently culpable state of mind amounting to at least deliberate indifference to his constitutional rights (the subjective element)." *Id*.

In this case, plaintiff alleges that his cell was searched on March 4, 2019, and April 9, 2019, for retaliatory reasons. *See* Prop. SAC at 22-23, 27. Even assuming plaintiff's allegations are sufficient to satisfy the subjective element of pleading an Eighth Amendment claim, plaintiff's allegations do not come close to meeting the objective element. Plaintiff complains of two retaliatory cell searches, conducted over the span of roughly five weeks. However, the proposed second amended complaint is devoid of any allegations which plausibly suggest that cell searches of inmates confined in the special housing unit were not routine and/or that plaintiff would not be subjected to the same amount of cell searches over a like period in the ordinary course of prison life. Absent such an allegation, there is no basis for the Court to plausibly infer that plaintiff was subjected to "more than a prisoner should have to tolerate before the searches qualify as cruel and unusual punishment." *Jones*, 665 F. Supp. 2d at 395. In other words, plaintiff has failed to allege facts which plausibly suggest that the searches were "so much a departure from the norm as to be greater than a de minimis disruption, or to qualify as conduct that would deter an individual of ordinary firmness from exercising his constitutional rights." *Id*.; *see also Johnson v. Gagnon*, No. 9:14-CV-916 (MAD/DEP), 2016 WL 5408161, at *5 (N.D.N.Y. Sept. 28, 2016) ("[A] single, unannounced cell search does not constitute Eighth Amendment cruel and unusual punishment."); *Bordas*,

21

2009 WL 35292, at *4 n.7 ("[T]he allegedly improper confiscation of his personal property during a cell search does not state a legally cognizable claim pursuant to § 1983, because inmates have no reasonable expectation of privacy in their prison cells, and thus 'no constitutional right to be free from cell searches of any kind, including retaliatory cell searches.'" (quoting *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 239 (S.D.N.Y. 2005) (collecting cases)).

Accordingly, plaintiff's Second Motion to Amend is denied to the extent plaintiff seeks to assert an Eighth Amendment excessive cell search claim.

### (c) Due Process Claims

To successfully state a claim under Section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)). Due process generally requires that the state afford individuals "some kind of hearing" prior to depriving them of a liberty or property interest. *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).

An inmate's protected liberty interest is implicated where the punishment at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). The duration of the challenged confinement, while not determinative, is a significant factor under *Sandin*.

Although the Second Circuit has declined to provide a bright-line rule as to what duration of punitive confinement implicates a prisoner's constitutional rights, general guidelines have been defined. *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). The

22

Second Circuit generally takes the position that normal confinement in a segregated housing unit of 101 days or less does not constitute an "atypical and significant hardship" under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (citing *Sealey v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999)).[13]  As a general matter, "[a] period of confinement between 101 and 305 days is considered to be an 'intermediate duration' and could implicate a liberty interest should a detailed record of the conditions of confinement indicate that it was an atypical and significant hardship." *Bunting v. Nagy*, 452 F. Supp. 2d 447, 456 (S.D.N.Y. 2006) (citing *Sealey*, 197 F.3d at 589); *see also Palmer*, 364 F.3d at 64-65 ("Where the plaintiff was confined for an intermediate duration -- between 101 and 305 days -- 'development of a detailed record' of the conditions of confinement relative to ordinary prison conditions is required." (citing *Colon*, 215 F.3d at 232).

The due process protections afforded inmates facing disciplinary hearings that affect a liberty or property interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing, *inter alia*, *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)).  The hearing officer's findings must be supported by "some" "reliable evidence." *Id*. (citing, *inter alia*, *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

### i. March 7, 2019 Disciplinary Hearing

Plaintiff alleges that SORC Brayton denied him the process to which he was entitled

---

[13]  A New York state inmate confined in SHU is placed in a solitary confinement cell for 23 hours a day. The inmate may exercise in the yard for one hour each day; is limited to two showers a week; and may not work or attend programming. *See Colon*, 215 F.3d at 230; N.Y. Comp. Codes R. & Regs., tit. 7, §§ 304.1-.14 (2008).

during his disciplinary hearing by, among other things, disregarding inconsistencies in the testimony of corrections officials and ignoring certain video evidence. *See* Prop. SAC at 24-26.

As an initial matter, the proposed second amended complaint fails to allege any facts which plausibly suggest that plaintiff was deprived of a liberty interest. Indeed, plaintiff alleges only that as a result of SORC Brayton's disciplinary determination, he was sentenced to ninety days lost privileges and keeplock confinement, where he was "deprived of [his] personal property, allowed on[ly] 3 showers a week, [and] placed in a dirty cell, which caused [him] loss of sleep [and] mental duress." Prop. SAC at 26. The alleged deprivation of privileges does not qualify as a serious hardship. *See, e.g., McEachin v. Selsky*, No. 9:04-CV-0083 (FJS/RFT), 2010 WL 3259975, at *9 (N.D.N.Y. Mar. 30, 2010) ("It is expected that confinement in SHU will be accompanied by a loss of privileges that prisoners in the general population enjoy and such conditions fall 'within the expected parameters of the sentence imposed by a court of law.'" (quoting *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996) (quoting *Sandin v. Connor*, 515 U.S. at 485 for the proposition that loss of commissary, recreation, package, and telephone privileges does not amount to an atypical and significant deprivation)), *report and recommendation adopted by* 2010 WL 3259982 (N.D.N.Y. Aug. 17, 2010). Moreover, plaintiff's allegations that he was deprived of unidentified "personal property" and placed in a "dirty cell" are entirely conclusory, and therefore insufficient to plausibly suggest that the SHU conditions were abnormal or unusual. *See Sealey*, 197 F.3d at 587, 589-90 (affirming the district court's conclusion that the plaintiff's 101–day confinement in the facility's special housing unit did not constitute an atypical hardship, even where the plaintiff was confined in his cell for twenty-three hours a

day, permitted one hour for recreation, limited to three showers per week, subject to noisy neighboring cells, lost various privileges, and had feces thrown at him "a few times"); *Smith v. Fischer*, No. 9:07-CV-1264, 2009 WL 632890, at *7 (N.D.N.Y. Feb. 2, 2009) (internal citation and quotation marks omitted) (emphasis in original) (recognizing that a liberty interest can be established at the motion to dismiss stage with respect to SHU confinement less than 101 days where the plaintiff has "alleged the existence of conditions in SHU far inferior to those prevailing in the prison in general,"  but noting a "bare allegation that [plaintiff's] procedural due process rights were violated by his 98-day confinement in the SHU is insufficient to state a claim"), *report and recommendation adopted by* 2009 WL 5449125, (N.D.N.Y. Mar. 9, 2009); *Walker v. Caban*, No. 08-CV-3025, 2008 WL 4925204, at * 11 (S.D.N.Y. Nov.19, 2008) (holding 90 days in solitary confinement did not implicate protected liberty interest); *Pilgrim v. Bruce*, 9:05-CV-198 (GLS/GHL), 2008 WL 2003792, at *15 (N.D.N.Y. May 7, 2008) (plaintiff's conclusory allegations, which notably do not include claims that he was denied food, clothing, bedding, heat, running water, toiletries, or medicine during his 60 days in keeplock, fail to establish that he was subjected to more severe conditions than in normal restrictive confinement); *Holland v. Goord*, No. 05-CV-6295, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (77 days in keeplock during which plaintiff was deprived of TV, phone, packages, and commissary, and was unable to go to Muslim services and classes, did not create a protected liberty interest); *Allah v. Poole*, 506 F. Supp. 2d 174, 191 (W.D.N.Y. 2007) (holding that brief deprivation of hygiene items does not impose a significant hardship).

Furthermore, the allegations in the proposed second amended complaint plausibly suggest that plaintiff was afforded the process to which he was entitled under *Wolff*.  Indeed,

plaintiff's apparent contention that he was denied due process during his hearing is based on his allegations that he was not allowed to introduce proof of his lawsuit into evidence, and that SORC Brayton overlooked inconsistencies in the testimony of corrections officials and disregarded video evidence which (1) showed that plaintiff was not allowed to be present for the search of his cell, and (2) did not show the removal of any contraband from his cell. *See* Prop. SAC at 24-26.

Even assuming the cell search violated a DOCCS Directive, the failure to dismiss the misbehavior report on that basis is not a violation of plaintiff's due process rights. *See, e.g.*, *Madera v. Goord*, 103 F. Supp. 2d 536, 540 (N.D.N.Y. 2000) ("Even assuming that a violation of state procedure took place, the violation of state law alone does not rise to the level of a constitutional violation. . . . Plaintiff does not allege how Valentino's failure to sign a misbehavior report denied plaintiff due process."). Moreover, by plaintiff's own allegations, four witnesses were allowed to testify at the hearing, and other records and documentary evidence were introduced. *See* Prop. SAC at 24-26. Indeed, plaintiff does not allege that he requested and was denied the opportunity to call any witness. In addition, the proposed second amended complaint lacks any allegations which plausibly suggest that SORC Brayton had a personal bias against plaintiff, or denied him advance written notice of the charges or a written statement of the evidence upon which she relied in making her determination. *See Booker v. Tokarz*, No. 10-CV-4796, 2012 WL 5431008, at *6 (S.D.N.Y. Nov. 7, 2012) (finding that the following "alleged faults with [the disciplinary] hearing are insufficient as a matter of law to make out a due process violation. . . : Royce's refusal to permit plaintiff to call witnesses whose testimony he deemed irrelevant, Royce's failure to provide the forms validating the marijuana test results in violate of state regulations, Royce's

26

conflict of interest in having heard plaintiffs grievance against Tokarz, Royce's refusal to permit plaintiff to examine each of his witnesses without restraint, and Royce's investigative role as a hearing officer (collecting some evidence and asking questions of some witnesses)").

Accordingly, plaintiff's Second Motion to Amend is denied to the extent plaintiff seeks to assert a due process claim against SORC Brayton.

### ii. April 17, 2019 Disciplinary Hearing

Plaintiff alleges that ADSP L. Gonzalez denied him the process to which he was entitled during his disciplinary hearing by offering to act as plaintiff's assistant for the disciplinary hearing, disregarding proof that the search of his cell occurred in violation of a DOCCS Directive, and influencing plaintiff to plead guilty to the disciplinary charges. *See* Prop. SAC at 29-30.

As an initial matter, while plaintiff alleges that he was sentenced to sixty days of keeplock confinement, the proposed second amended complaint is devoid of any allegations regarding the amount of time plaintiff actually spent in keeplock, or the conditions of plaintiff's keeplock confinement. Thus, there is no basis for the Court to plausibly infer that plaintiff had a liberty interest in being free from the confinement at issue. *See Anderson v. Marr*, No. 10-CV-818, 2011 WL 3423694, at *9 (S.D.N.Y. July 18, 2011) (assuming that plaintiff remained in administrative segregation for 126 days and dismissing the due process claim because "Anderson's various submissions make no mention of the conditions of the administrative segregation at Otisville or the MDC 'relative to ordinary prison conditions[,]' [and] [h]e therefore has not created the 'detailed record of the conditions of the confinement relative to ordinary prison conditions' needed to establish a liberty interest for this

27

'intermediate' length of confinement" (quoting *Palmer*, 364 F.3d at 64), *report and recommendation adopted by* 2011 WL 3585968 (S.D.N.Y. Aug. 10, 2011); *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 607 (S.D.N.Y. 2009) (finding that a plaintiff failed to plead "a cognizable liberty interest" based on 280 days of disciplinary confinement because the plaintiff "failed to make any allegations detailing the conditions of his confinement . . ., and because the duration of his confinement was shorter than confinements that courts in this Circuit have deemed sufficient to impose per se atypical or significant hardship").

In addition, the allegations in the proposed second amended complaint plausibly suggest that plaintiff was afforded the process to which he was entitled under *Wolff*. Indeed, by plaintiff's own allegations, he plead guilty to some or all of the charges in the misbehavior report that gave rise to his disciplinary hearing. *See* Prop. SAC at 30. While plaintiff alleges he was told he would face a harsher sentence if he did not plead guilty, he does not allege that ADSP Gonzalez forced him to plead guilty despite being aware of plaintiff's innocence and/or the absence of any evidence in the record of plaintiff's guilt. Rather, the allegations in the proposed second amended complaint plausibly suggest that ADSP Gonzalez gave plaintiff a choice, which is not a due process violation. *See Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 277-78 (N.D.N.Y. 2018) (rejecting allegation that inmate was coerced into pleading guilty as sufficient to state a due process violation).

Furthermore, and setting aside plaintiff's guilty plea, the proposed second amended complaint is devoid of any allegations which plausibly suggest that plaintiff was denied (1) advance written notice of the charges, or (2) the opportunity to call any witnesses or introduce any documentary evidence. The proposed second amended complaint also lacks any allegations which plausibly suggest that ADSP Gonzalez had a personal bias against

plaintiff, or that plaintiff suffered any harm as a result of not having an employee assistant. *See Chavis v. vonHagn*, No. 02-CV-0119, 2009 WL 236060, at *53 (W.D.N.Y. Jan. 30, 2009) (plaintiff's claims that he was denied an employee assistant to prepare for his disciplinary hearings failed where the record established that "plaintiff was indeed able to present evidence (and often did), both oral and documentary, in his own defense" (citing *Wolff*, 418 U.S. 539)); *Clyde v. Bellnier*, No. 9:08-CV-0909, 2010 WL 1489897, at *6 (N.D.N.Y. Apr. 13, 2010) (finding that hearing officer substituting himself as inmate's assistant for purposes of gathering evidence for disciplinary hearing did not constitute a due process violation where inmate did not identify any evidence to which he was entitled and requested, yet was denied); *Lewis v. Johnson*, No. 9:08-CV-482 (TJM/ATB), 2010 WL 3785771 at *12-13 (N.D.N.Y. Aug. 5, 2010) (Inmate's right to assistance was not violated where he asked hearing officer to help, hearing officer did so, and the inmate was satisfied with the assistance; further noting that it is not a per se due process violation for a hearing officer to serve as an inmate's assistant), *report and recommendation adopted by* 2010 WL 3762016 (N.D.N.Y. Sept. 20, 2010); *cf. Burroughs*, 325 F. Supp. 3d at 277-78 (rejecting due process claim based on procedural argument because the complaint "lacks any facts suggesting how Burroughs was prejudiced by any alleged procedural errors or that the errors affected the outcome of the hearing").

For these reasons, plaintiff's Second Motion to Amend is denied to the extent plaintiff seeks to assert a due process claim against ADSP Gonzalez.

## III. DEFENDANTS' MOTION TO DISMISS

As set forth above, plaintiff's Second Motion to Amend is granted in part and denied in part, and the proposed second amended complaint will be re-docketed as the second

amended complaint (and operative pleading).  Because certain new claims in the second amended complaint have survived initial review, defendants' Second Motion to Dismiss is denied without prejudice and with leave to renew upon the completion of service on all of the named defendants who remain in this action.

The deadline for the defendants who have already been served to respond to the second amended complaint is stayed pending the completion of service on all of the named defendants who remain in this action.  Upon the completion of service on all of the named defendants who remain in this action, the deadline for all of the named defendants to respond to the second amended complaint shall be reset in accordance with the Federal Rules of Civil Procedure.

## IV.    DOE DEFENDANTS

In the January 2019 Order, the Court requested that the New York State Attorney General's Office produce, to the extent possible and within thirty (30) days, information necessary for plaintiff to identify and serve Sgt. John Doe #1, Sgt. John Doe #2, C.O. John Doe #1, C.O. John Doe #2, C.O. John Doe #3, and C.O. John Doe #6.  *See* January 2019 Order at 26-27.  Thereafter, counsel filed a Status Report explaining the efforts undertaken to identify the aforementioned "Doe" defendants and the inability of DOCCS staff to identify any of these individuals.  *See* Dkt. No. 13.  In response, the Court issued an Order on March 6, 2019, advising plaintiff that if he wishes to pursue his claims against one or more of the remaining "Doe" defendants, he must take reasonable steps to ascertain the identity of such "Doe" defendants through discovery or otherwise.  Dkt. No. 15 ("March 2019 Order").  The March 2019 Order further advised plaintiff that any "Doe" defendant whose identity plaintiff failed to ascertain in time to permit the timely service of process would be dismissed without

prejudice. *Id*.

Since the March 2019 Order, plaintiff has filed two amended pleadings, yet has failed to provide any additional detail about the identifies of any of the "Doe" defendants in either of these pleadings. Plaintiff is therefore reminded, once again, that it is his obligation to take the necessary steps to ascertain the identities of the "Doe" defendants who remain in this action.

## V. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the Clerk shall docket plaintiff's proposed second amended complaint (Dkt. No. 37-1), with exhibits (Dkt. No. 37-2), as the second amended complaint, which is accepted for filing and is the operative pleading; and it is further

**ORDERED** that the Clerk shall update the docket to add the following parties as defendants: (1) Corrections Officer John Doe #8; (2) Corrections Officer Mahan; (3) Corrections Sergeant Burgess; (4) SORC Brayton; (5) Corrections Officer John Doe #9; and (6) ADSP L. Gonzalez; and it is further

**ORDERED** that the following claims **SURVIVE** sua sponte review and require a response: (1) plaintiff's free exercise claims against defendants C.O. John Doe #2, C.O. John Doe #3, Sgt John Doe #1, Wood, Dubrey, Annucci, and Bell; (2) plaintiff's retaliation claims against defendants C.O. John Doe #2, Baer, C.O. John Doe #3, Wood, Hunt, Young, Holland, Sgt John Doe #1, Dubrey, Annucci, Bell, Mahan, and John Doe #8; (3) plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against defendants Baer and C.O. John Doe #7 based on the alleged events that occurred on March 29, 2018; (4) plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against

defendants Hunt, C.O. John Doe #3, Bell, and Annucci based on the alleged events that occurred on April 6, 2018; (5) plaintiff's Eighth Amendment excessive force claims against defendants Baer, Bell, and Annucci based on the alleged events that occurred on April 17, 2018; and (6) plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against defendants Sgt John Doe #1, Sgt John Doe #2, C.O. John Doe #1, C.O. John Doe #6, Annucci, and Bell based on the alleged events that occurred on April 22, 2018; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) plaintiff's First Amendment retaliation claims against Corrections Sergeant Burgess and Corrections Officer John Doe #9; (2) plaintiff's Eighth Amendment excessive cell search claims against Corrections Officer John Doe #8, Corrections Officer Mahan, Corrections Sergeant Burgess, and Corrections Officer John Doe #9; and (3) plaintiff's Fourteenth Amendment due process claims against SORC Brayton and ADSP L. Gonzalez; and it is further

**ORDERED** that all remaining claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted;[14] and it is further

---

[14] Generally, when a district court dismisses a *pro se* action *sua sponte*, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend. *See Shuler v. Brown*, No. 9:07-CV-0937 (TJM/GHL), 2009 WL 790973, at *5 & n.25 (N.D.N.Y. March 23, 2009) ("Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint."), *accord, Smith v. Fischer*, No. 9:07-CV-1264 (DNH/GHL), 2009 WL 632890, at *5 & n.20 (N.D.N.Y. March 9, 2009); *Abascal v. Hilton*, No. 9:04-CV-1401 (LEK/GHL), 2008 WL 268366, at *8 (N.D.N.Y. Jan.13, 2008); *see also Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.*, 16 F. Supp. 2d 375, 384 (S.D.N.Y. 1998) (denying leave to amend where plaintiff had already amended

**ORDERED** that the Clerk shall issue a summons and forward it, along with a copy of the second amended complaint, to the United States Marshal for service upon defendant Mahan;[15] and it is further

**ORDERED** that the deadline for defendants Annucci, Baer, Bell, Hunt, Wood, Holland, Dubrey, and Young to respond to the second amended complaint is **STAYED** pending the completion of service on defendant Mahan.  Upon the completion of service on defendant Mahan, defendants Annucci, Baer, Bell, Hunt, Wood, Young, Holland, Dubrey, and Mahan must respond to the amended complaint in accordance with the Federal Rules of Civil Procedure; and it is further

**ORDERED** that plaintiff take reasonable steps to ascertain the identity of the "Doe" defendants, and when identified, seek to amend the second amended complaint to add the individuals as defendants in this action pursuant to Federal Rule of Civil Procedure 15(a);[16] and it is further

**ORDERED** that the Second Motion to Dismiss (Dkt. No. 31) is **DENIED without prejudice and with leave to renew** upon the completion of service on defendant Mahan; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th

---

complaint once); *cf*. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial of leave to amend not abuse of discretion movant has repeatedly failed to cure deficiencies in pleading).

[15]  Because Helena O. Pederson, on behalf of the Office of the New York State Attorney General, has appeared in this action as counsel for defendants Annucci, Baer, Bell, Hunt, Wood, Holland, Dubrey, and Young, the Clerk need not issue summonses for these defendants.

[16]  Summonses will not issue for the "Doe" defendants because the U.S. Marshal cannot effect service on an individual who has not been identified by name.

Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do so may result in the dismissal of this action**; and it is further

  **ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff and counsel for the defendants who have appeared in this action.

**IT IS SO ORDERED.**

Dated: October 18, 2019

Thomas J. McAvoy
Senior, U.S. District Judge